UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


BARBARA LENSING,
          Plaintiff,

                               No. 1:03-cv-575

-v-
                           HONORABLE PAUL L. MALONEY

JOHN E. POTTER, POSTMASTER GENERAL,
AND UNITED STATES POSTAL SERVICE,
          Defendant.


<u>OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT</u>

      Plaintiff Barbara Lensing, a longtime employee of the United States Postal Service, alleges

she was subject to discrimination (Count 1) and retaliation (Count 3) in violation of Title VII.

(Amended Compl.)  She also alleges violations of § 1981 and § 1983 (Count 2).  (*Id.*)  Plaintiff

Lensing filed her suit in September 2003.  The parties participated in voluntary facilitative

mediation.  On October 14, 2004, Defendant Potter (Defendant) filed this motion (Dkt. No. 49) for

summary judgment.  Plaintiff filed a response.  (Dkt. No. 60.)  Defendant filed a reply.  (Dkt. No.

70.)

      In March 2005, the parties reached a settlement agreement.  As part of the agreement,

Plaintiff was required to apply for disability retirement, which Defendant would not contest.  The

agreement was contingent upon the approval by the Office of Personnel Management (OPM) of

Plaintiff's application for disability retirement.  The OPM denied Plaintiff's application and Plaintiff

appealed to the Merit Systems Protection Board, who affirmed the OPM's decision.  October 31,

2008, the United States Court of Appeals for the Federal Circuit affirmed the decision of the Merit

Systems Protection Board.  *Lensing v. OPM*, No. 2007-3267, (Fed. Cir. Oct. 31, 2008).[1]

On February 3, 2009, this court reinstated Defendant's motion for summary judgment, which had previously been rendered moot by the parties' settlement agreement.  On April 1, 2009, Plaintiff filed a motion to correct or amend her complaint, which was denied (Dkt. No. 115).  The court requested the parties file additional briefs to supplement their previous submissions on the motion, which they did.  (Dkt. Nos. 109 and 125.)  Oral argument on the motion for summary judgment occurred on January 11, 2010.

I.  STANDARD OF REVIEW

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.  FED. R. CIV. P. 56(c); *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008).  The burden is on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by pointing out the absence of evidence to support the nonmoving party's case.  *Bennett v City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  The facts, and the inferences drawn from them, must be viewed in a light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (quoting *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  Once the moving party has carried its burden, the nonmoving party must set forth specific facts showing there is a genuine issue for trial.  FED. R. CIV. P. 56(e); *Matsushita*, 475 U.S. at 574.  The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that

---

[1]*See* Dkt. No. 113-3, Exhibit 2 to Defendant's response to Plaintiff's motion to amend.

one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252.

## II. BACKGROUND

Plaintiff Barbara Lensing is a caucasian female who started working for the United States Postal Service in 1980.  In 1993, she was hired as a human resources associate, EAS level 11, in the Grand Rapids, Michigan district office.  Since then, Plaintiff been assigned several details, which are temporary work assignments.  Although a detail may involve responsibilities at a different position and level, the detail does not change the employee's position or level.  From 1995 through November 1999, Plaintiff was detailed to an EAS level 15 position in personnel.  (Pl. Affidavit ¶ 6.) Between November 1999 through August 2000, Plaintiff was detailed to a level 17 human resources specialist.  (Pl. Dep., 34.)  Kathryn Monroe, then Plaintiff's supervisor, trained Plaintiff for the level 17 detail and recommended Plaintiff for the detail.  (Monroe Affidavit ¶¶ 8-9.)  Robert Lancaster, the manager of personnel services, had the ultimate authority for assigning the detail.  (Lancaster Affidavit ¶ 7.)  Lancaster contacted other individuals who had more seniority than Plaintiff for the position, but no one was willing to accept the job.  (*Id.* ¶ 8.)  Based on Monroe's recommendation and lack of interest by others with more seniority, Lancaster assigned the EAS level 17 detail to Plaintiff.  (*Id.* ¶ 9.)

### A.  EAS Level 17 Position

A permanent EAS level 17 position, human resources specialist, was posted on June 13, 2000.[2]  (Pl. Ex. 2.)  Although Lancaster would have been involved in the candidate selection and would have made the final decision, he recused himself from the process because of his personal

---

[2]The position became available because Monroe, who had held the position, opted for a lateral transfer.  (Monroe Affidavit ¶ 6.)

3

relationship with Plaintiff.[3]  (Pl. Dep., 56.)  As a result, the person in charge of the process was Chester Cross, a black male and the manager of the human resources department.  (Monroe Affidavit ¶ 13.)  Pursuant to the employee handbook regulations, a review committee or advisory panel was appointed to review the applications.  (*See* Def. Ex. G § 533.5.)  The three individuals on the committee were (1) Dorothy Whiting, a black female manager of distribution operations, (2) Juan Garcia, an hispanic male who was the station manager of the East Town branch office in Grand Rapids, and (3) Patricia Lemak, a white female human resources specialist EAS level 17 from Flint. (Def. Br., 5.)  The job of the review committee was to review the applications and make recommendations for interviews with the person who would make the final selection.  (Monroe Affidavit ¶ 14; Def. Ex. H - "Applicant's Guide for Responding to Personnel Section Requirements on Form 991" (Guide) at 4.)

The vacancy announcement for the EAS level 17 position identified eleven job requirements, three of which were knowledge-based and eight which were based on abilities.  (Pl. Ex. 2.)  The announcement instructed applicants to fill out form 991 and a separate statement of qualification for each "knowledge, skill, or ability (KSA)."  (*Id.*)  In the separate statement of qualification, the "best applications will use the STAR method of describing qualifications."  (Guide, 5.)  The STAR method refers to Situation/Task, Action, Result.  (*Id.*)  The Guide directs applicants using the STAR method to give an example of the situation or task related to each requirement, explain the action taken to resolve the situation or accomplish the task, and explain the result of the action taken.  (*Id.*)

---

[3]Lancaster and Plaintiff began a personal relationship in 1998, which lasted at least through 2004 when Plaintiff was deposed.  (Pl. Dep., 56.)

Six individuals submitted applications for the job.[4]  The review committee recommended

Gina Mason (black female), Petri Carter[5] (black female), and Beth Eliopoulos (white female).  (Def.

Ex. I.)  The review committee did not recommend Timothy Quigley (white male), Diane Haddix

(white female), or Plaintiff for an interview.  Cross interviewed the three individuals recommended

by the committee and selected Gina Mason for the job.  (Def. Ex. J.)  Plaintiff was informed she was

not recommended for an interview in a letter dated July 24, 2000.  (Def. Ex. K.)  After receiving the

letter, Plaintiff sent the members of the committee an email asking for advice about where her

qualifications were lacking for an EAS level 17 position.  (Def. Ex. L.)  In response, Whiting sent

a letter to Plaintiff stating "I did not find that your qualifications were lacking for the EAS Level 17

position" and recommending Plaintiff work on utilizing the STAR format to "enhance your

presentation of your qualifications."  (Def. Ex. M.)

The parties have discussed Mason's and Plaintiff's use of the STAR method in their

applications.  At the administrative hearing, a Whiting testified the recommendations for interviews

were based only on the 991s, KSAs, and the STAR format.[6]  (Admin. Hrg., 265.)  Lemak and Garcia

both testified that they were not impressed with Plaintiff's application, specifically her statement of

---

[4]Defendant identifies six individuals in their brief.  (Def. Br., 6.)  Plaintiff identifies five
individuals in her brief.  (Pl. Br. 3.)  Neither party cites any documentary evidence for their
assertions.  Plaintiff's brief omits Diane Haddix from the list of applicants.  Chester Cross stated
there were six applicants in a comparative analysis letter that was part of the hiring process.
(Def. Ex. J.)

[5]Petri Carter has since changed her name.  She will be referred to as "Petri Carter" or
"Carter" so as to avoid confusion.

[6]Both parties attached portions of the Administrative Hearing to their briefs in support.
(Pl. Ex. 21; Def. Hrg. Tr.)  The transcripts merely identify the person testifying as "witness."
Defendant's reply brief includes the index to the Administrative Hearing, which identifies the
pages on which each witnesses' testimony occurs.  (Def. Reply Br. Exhibit B.)

qualification. (Admin. Hrg., 210-13, 299-300.) Lemak and Garcia agreed that Plaintiff was not among the top three candidates, based on their review of the applications submitted. (*Id.*, 209-10, 293-94.) Defendant claims, according to Whiting, "Lensing did not know the difference between light and limited duty, which is an essential and elementary facet of Human Resources." (*Id.*, 8.) After Mason accepted the position, Plaintiff was taken out of the level 17 detail and was placed in an EAS level 15 detail in personnel. (Pl. Dep., 91; Admin. Hrg., 321.) In this detail, Plaintiff reported to Mason. (*Id.*, 92-93.)

Plaintiff requested an appointment with an EEO counselor on August 17, 2000. (Def. Ex. A.) She filed an EEO complaint alleging discrimination on October 16, 2000. (Def. Ex. B.)

B. EAS Level 15 Position

On July 5, 2000, a vacancy announcement was posted for two EAS level 15 human resources specialists, one in personnel and one in injury compensation. (Pl. Ex. 8.) Plaintiff submitted applications for both positions. (Amended Compl. ¶ 32.) A single three-person review committee was formed to consider the applications for both positions.[7] Mason interviewed the individuals recommended by the committee and made the final selection. (Def. Ex. N.) From the applications submitted, the committee recommended interviewing five individuals for the two positions: Lee Bosch (white male), Petri Carter (black female), Diane Haddix (white female), Plaintiff, and Brenda Sukstas (white female). (*See* Admin. Hrg., 323-24.)

After interviewing the five recommended candidates, Mason selected Petri Carter for the

---

[7]Defendant states the review committee consisted of a caucasian male and female and black female. (Def. Br., 9.) The individuals on the three person committee were Sandy Sharp (human resources specialist in Traverse City), Annette Dorsey (customer service analyst in Grand Rapids), and Malcolm Miller (customer service in Holland). (Def. Ex. N.)

personnel position.[8]  (Def. Ex. N.)  Mason acknowledged Plaintiff "had a good interview" and "possess[ed] the skills to perform the duties of the subject position."  (*Id.*)  However, she was "not as qualified as the recommended candidate," "during her interview her responses were not as thorough as the selected candidate," and her "ability to communicate orally is limited; in that, she is unable to interact with all employees of the unit."  (*Id.*)  Cross approved Mason's recommendation.  Plaintiff learned she was not selected for either EAS level 15 position on October 20, 2000.  (Def. Exs. C and D.)

On October 23, 2000, Plaintiff requested an appointment with an EEO counselor.  (Def. Ex. C.)  Plaintiff filed an EEO complaint on December 12, 2000 alleging both discrimination and retaliation.  (Def. Ex. D.)  With regard to the retaliation claim, Plaintiff alleged Mason was aware Plaintiff had filed an EEO complaint relating to the EAS level 17 position.  (*Id.*)  Mason testified at the administrative hearing that she was working in the EEO office before she moved into the EAS level 17 position and received a telephone message from Plaintiff requesting forms for filing a complaint.  (Admin. Hrg., 337-38.)

C.  EEO Process

Plaintiff's two EEO claims were joined together and investigated.  (Def. Ex. F - EEO Opinion.)  A hearing was held in February 2003.  (*Id.*)  The administrative law judge (ALJ) issued a decision against Plaintiff on June 16, 2003.  (*Id.*)  The ALJ found Plaintiff presented a *prima facie* case of race discrimination for her nonselection of the level 17 position.  (*Id.*, 4.)  However, Defendant offered a nondiscriminatory reason for not giving Plaintiff an interview and Plaintiff

---

[8]Defendant states Petri Carter was also selected for the vacancy in injury compensation and, when given the opportunity to choose between the two positions, she selected the vacancy in personnel.  (Def. Br. 10.)

failed to establish that reason was pretextual. (*Id.*, 4-5.) The ALJ found Plaintiff also presented a *prima facie* case of discrimination and retaliation for her nonselection of the level 15 position. (*Id.*, 6.) Again, however, Defendant offered a nondiscriminatory reason for the decision and Plaintiff failed to establish that reason was pretextual. (*Id.*)

III. ANALYSIS

A. TITLE VII DISCRIMINATION CLAIMS

Federal law prohibits employers from "discriminat[ing] against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). When an employee does not have direct evidence of discrimination, the employee may utilize the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to establish a claim of employment discrimination under Title VII. *Grizzell v. City of Columbus Div. of Police*, 462 F.3d 711, 719 (6th Cir. 2006). In order to establish a *prima facie* case of race discrimination for failing to promote, a plaintiff must show (1) she is a member of a protected class; (2) she was qualified for and applied for a promotion; (3) she was considered for and denied the promotion; and (4) another person with similar qualifications, who is not a member of a protected class, received the promotion. *Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003) (citing *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1020-21 (6th Cir. 2000)); *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 255 (6th Cir. 2002). In cases where the plaintiff is a member of the majority, the Sixth Circuit Court of Appeals modified the first and fourth prongs of a

plaintiff's *prima facie* case under *McDonnell Douglas*.[9]  *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir. 1985).

> [U]nder the first prong, plaintiff must demonstrate "background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority."  Under the fourth prong, because this is a failure to promote case, plaintiff must show that the "employer treated differently employees who were similarly situated but not members of the protected group."

*Zambetti*, 314 F.3d at 255 (citation omitted).

The Sixth Circuit has identified several ways a plaintiff might establish the background circumstances prong of a *prima facie* case.[10]  A plaintiff needs to produce evidence that the employer has unlawfully considered race as a factor when making employment decisions in the past, which would justify a suspicion "that incidents of capricious discrimination against whites because of their race may be likely."  *Zambetti*, 314 F.3d at 256 (quoting *Jamison v. Storer*, Nos. 83-1170, 83-1244, 1987 WL 44901, at *3 (6th Cir. Sept. 30, 1987)).  Statistical data may be used to establish background circumstances.  *See Southerland*, 344 F.3d at 615-16 (involving "significant evidence in the form of statistical data tending to show that in the years prior to the employment decisions at issue, the Treasury Department considered race in making employment decisions.").  However,

---

[9]Allegations of discrimination by members of the majority are often referred to as "reverse discrimination" cases.

[10]In both *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 801 n. 7 (6th Cir. 1994) and *Zambetti*, 314 F.3d at 257, the panels noted that the "background circumstances" prong is only required of majority plaintiffs, and not plaintiffs who are members of a protected class.  The panels noted this burden may constitute an impermissible heightened pleading standard. *See also Simpson v. Vanderbilt Univ.*, No. 08-6548, 2009 WL 4981684, at * 6 (6th Cir. Dec. 22, 2009) ("[W]e have expressly cautioned against letting these modifications 'impermissibly impose a heightened pleading standard on majority victims of discrimination.'" (citation omitted)).  In both cases, the panels concluded there were other deficiencies in the plaintiffs' cases and concluded it was unnecessary to resolve the issue.

evidence that more members of the protected class have been hired or promoted than nonmembers of a protected class may not be sufficient, as that evidence does not provide information about the pool of candidates from which the hires and promotions were made. *Zambetti*, 314 F.3d at 256. *Cf. DiBiasi v. Charter County of Wayne*, 537 F.Supp.2d 903, 918-19 (E.D. 2008) (involving a reverse discrimination claim where the plaintiff established a *prima facie* case by identifying the pool of applicants for certain positions and the race and sex of the individuals ultimately appointed). The Sixth Circuit Court of Appeals recently described the sort of statistical data relevant to a discriminatory failure to promote claim in a typical case.

> "In cases involving promotion policies, the relevant inquiry is comparing the number of protected group members benefitting from promotions with the number seeking them; this figure is then contrasted with the corresponding ratio for the non-protected group." "[S]tatistics based on an applicant pool containing individuals lacking minimal qualifications for the job would be of little probative value," however. And while "sufficiently substantial" statistical disparities raise an inference of disparate impact, the relevant analysis should not be "framed in terms of any rigid mathematical formula."
>
> Ideally, to determine if African-American employees were promoted at a lower rate than their white counterparts, one would compare the respective ratios of promoted African-American and white employees to the number of qualified African-American and white applicants.

*Phillips v. Gates*, 329 F.App'x 577, 581 (6th Cir. 2009) (citations omitted).

In addition to statistical data, there are at least two other methods through which a plaintiff might establish the background circumstances prong. When the individual in charge of making the employment decision is a member of the protected class, a plaintiff can meet the background circumstances prong of a *prima facie* case. *Zambetti*, 314 F.3d at 257; *see Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008); *Morris v. Family Dollar Stores of Ohio, Inc.*, 320 F.App'x 330, 339-40 (6th Cir. 2009); *see also Turner v. Grande Pointe Healthcare Cmty.*, 631 F.Supp.2d 896, 911 (N.D. Ohio 2007) (involving a reverse discrimination claim under Ohio law

where the federal district court relied on Title VII case law to conclude that, because the majority of the workforce and management of the defendant were female and the decision makers were female, the background circumstances prong was met). A plaintiff might also establish the background circumstances prong by showing inconsistencies in "the procedures used by the defendant in the disputed case compared to those routinely used." *Rivette v. United States Postal Serv.*, 625 F.Supp.768, 771 (E.D. Mich. 1986) (citing *Daye v. Harris*, 655 F.2d 258 (D.C.Cir. 1981)).

The Sixth Circuit has also described what a plaintiff must show in order to establish that the differently treated individuals were similarly situated to the plaintiff. To establish the similarly situated prong, the plaintiff is "required to prove that all of the relevant aspects of [her] employment were 'nearly identical' to those of [the comparable employee's] employment situation." *Pierce*, 40 F.3d at 802 (citing *Ruth v. Children's Med. Ctr.*, 940 F.2d 662, 1991 WL 151158, at * 6 (6th Cir. Aug 8, 1991) (unpublished table opinion)). The similarities between the plaintiff and the individual who was promoted "must exist 'in all relevant aspects of their respective employment circumstances.'" *Leadbetter v. Gilley*, 385 F.3d 683, 691 (6th Cir. 2004) (quoting *Pierce*, 40 F.3d at 802 (quoting *Ruth*)). "Differences in job title, responsibilities, experience, and work record can be used to determine whether two employees are similarly situated." *Id.* (citing *Pierce*). "Superficial similarities between [the two employees] are not sufficient to show a *prima facie* case of discrimination." *Arendale*, 519 F.3d at 604.

In cases of discrimination against a member of the protected class, the Sixth Circuit has warned courts not to conflate the first and third stages of the *McDonnell Douglas* process. *See Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 664-65 (6th Cir. 2000). This typically occurs when

the court considers the reasons proffered by the employer for the adverse employment act at the *prima facie* stage. *Id.* at 664 (collecting cases). Applying this warning to cases involving discrimination against a member of the majority, the Eastern District of Michigan concluded, for the similarly situated prong of a claimant's *prima facie* case, courts should not "compare the qualifications of a plaintiff and similarly-situated employees." *DeBaisi*, 537 F.Supp.2d at 920 (citing *Hoffman v. Sebro Plastics, Inc.*, 108 F.Supp.2d 757 (E.D. Mich. 2000). In failure to promote cases, the issue is whether the two candidate were both qualified for and considered for the position. *Id.* (quoting *Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 516 (6th Cir. 2003)).

If the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its decision. *McDonnell Douglas*, 411 U.S. at 802. The burden then shifts back to the plaintiff to demonstrate that the proffered reasons are pretextual. *Id.* at 804. The plaintiff can establish pretext by showing the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's decision, or (3) was insufficient to warrant the challenged decision. *Zambetti*, 314 F.3d at 258 (citing *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). "[T]he plaintiff may also demonstrate pretext by offering evidence which challenges the reasonableness of the employer's decision 'to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation.'" *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008) (involving a claim of race discrimination by a member of a protected class) (citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003) (en banc)). When the evidence in the record demonstrates the plaintiff was "significantly better qualified for the job," "the factfinder can legitimately infer that the employer consciously selected a less-qualified

candidate - something employers do not usually do, unless some other strong indication, such as discrimination, enters into the picture." *Id.* (quoting *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C.Cir. 1998)). Throughout the burden-shifting process, the ultimate burden of persuading the trier of fact that the defendant discriminated against the plaintiff remains, at all times, on the plaintiff. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Defendant claims Plaintiff cannot establish a *prima facie* case of discrimination for the EAS level 17 position. Defendant argues Plaintiff cannot establish either the second or fourth prongs of a *prima facie* case because she was not selected for an interview. Defendant argues the review committee did not discriminate based on race because they recommended a different white female for an interview.

Defendant does not challenge Plaintiff's ability to establish a *prima facie* case for discrimination regarding the EAS level 15 position.[11]

Plaintiff easily meets the second and third prongs of her discrimination claim for the 17 and level 15 positions. Plaintiff has established she was qualified for and applied for both positions. She met the qualifications identified on the vacancy announcements. She timely submitted her 991 forms and statements of qualifications. Plaintiff has established she was considered for and denied the promotions.

Plaintiff can establish the first prong, background circumstances, for both of her discrimination claims. In both cases, Cross, a black man, selected a black woman for the promotion. Under *Zambetti*, *Arendale*, and *Morris*, this fact is sufficient to show Defendant is the unusual

---

[11]When Defendant addresses Plaintiff's EAS level 15 claims in his brief, Defendant argues Plaintiff cannot make out a case for *retaliation*. Defendant does not address Plaintiff's ability to establish a *prima facie* case for *discrimination*. (*See* Def. Br., 18.)

employer who discriminates against the majority. Plaintiff's attempt to establish the background circumstances prong through statistics is not persuasive. Plaintiff asserts, when she began working at the Grand Rapids personnel office, of the nine positions in the department hierarchy, only one was held by a person of color. Plaintiff further asserts, since Cross has assumed his position as head of the human resources department, seven of ten positions are held by people of color. Plaintiff's evidence does not identify the applicant pool or candidates for any of the positions in these departments. Plaintiff's reliance on *Sutherland* is misplaced. The positions at issue in *Sutherland* were auditors with the Michigan Department of Treasury. The plaintiffs in *Sutherland* established that 7.7 % of the "qualified labor force" in Michigan at the time was black. 344 F.3d at 615-16. Plaintiff assumes, but does not establish or even argue, that the qualifications for auditors are the same as the qualifications for personnel and human resource positions within the United States Postal Service. Neither has Plaintiff established that the policies used in her case were not the consistent with the policies routinely used.[12] *See Rivette*, 625 F.Supp. 771. Plaintiff identifies several ways in which the review committee allegedly deviated from written policies. (Pl. Br., 14-16.) Plaintiff's evidence, the written policy statements, does not establish that those policies are

---

[12]No party has identified any authority indicating that the Sixth Circuit has adopted this test as a means of establishing the background circumstances prong. In *Rivette*, the district court relied on *Daye v. Harris*, 655 F.2d 258 (D.C.Cir. 1981) for this proposition. In *Daye*, the plaintiff alleged the employer manipulated work schedules to ensure that black nurses scored more highly on its merit promotions plan. No similar allegation has been made here. The problem with some of Plaintiff's arguments on this point is that they risk conflating the first and third stages of the *McDonnell Douglas* burden shifting scheme. Some, but not all, of the alleged deviations from the allegedly established policies overlap with the use of the STAR method and Plaintiff's statement of qualifications. Plaintiff's alleged problems with her statement of qualifications and use of the STAR method were the reasons she was not granted an interview for the EAS level 17 position. Thus, those concerns are properly addressed at the third stage, rather than the first stage of the burden shifting scheme.

used either consistently or routinely, or that the review committee deviated from the policies consistently or routinely used.

Plaintiff can establish the fourth prong, similarly situated, for the level 15 position, but not for the level 17 position. Plaintiff was granted an interview for the level 15 position, but not for the level 17 position. Because she was not given an interview for the level 17 position, Plaintiff cannot establish she was similarly situated to Mason in all relevant aspects of their respective employment circumstances. *See Leadbetter*, 385 F.3d at 691; *see also Grant v. Harcourt Brace Coll. Publishers*, 191 F.3d 452, 1999 WL 717982, *4 (6th Cir. 1999) (unpublished table opinion) (holding, in an age discrimination case, the plaintiff was not similarly situated because, in part, he did not interview for the position even though he was offered an interview). Because she was not given an interview for the level 17 position, Cross never considered Plaintiff for the promotion. In contrast, Plaintiff was similar to Carter in all relevant aspects of their respective employment circumstances. Both were interviewed for the level 15 position, but Plaintiff was not selected for the promotion.

Defendant claims, even if Plaintiff can present a *prima facie* case for each position, there were legitimate, nondiscriminatory reasons for the decisions made. This court agrees. The review committee testified they were unimpressed with Plaintiff's knowledge of the KSA's for the EAS level 17 position or her use of the STAR method. Plaintiff was not selected for the EAS level 15 position because she had a poor interview, refused to work with one of her colleagues, Lois Dukes, and was uncooperative when asked to perform new tasks.

Even if Plaintiff could establish a *prima facie* case of discrimination for the level 17 position, she has not demonstrated the reason proffered by Defendant for the decision made was pretextual. The review committee ranked Plaintiff fourth based on her statement of qualification. Plaintiff

offers several arguments for pretext.  First, Plaintiff alleges she was objectively more qualified than

Mason, based largely on her detail to the level 17 position and Mason's lack of work experience in

a human resources department for the previous nine years.  Plaintiff cannot establish Mason was

unqualified for the position; she met the requirements advertised in the vacancy announcements.

Plaintiff's experience in the detail did not translate into a superior application.  Lemak testified, after

reviewing Plaintiff's submissions, she ranked Plaintiff fourth of the six candidates.  (Admin. Hrg.,

210-11.)  After reviewing Plaintiff's submissions, Garcia also did not include Plaintiff among the

top three of the six candidates.  (*Id.*, 287.)  Both Lemak and Garcia testified they were surprised that

someone who had been detailed to the position did not have as strong a statement of qualification

as the other candidates.  (*Id.*, 213 and 299.)  Plaintiff's evidence of her superior qualifications,

Plaintiff's own affidavit and Monroe's affidavit, were not before the review committee.  The review

committee evaluated Plaintiff's ability to demonstrate her superior qualifications through the STAR

method and the KSAs and found Plaintiff's application lacking.

Second, Plaintiff offers evidence that her use of the STAR method was not problematic and

Mason's use of the STAR method was flawed.  Plaintiff relies on Lancaster's affidavit.[13]  Lancaster

identifies several flaws with Mason's use of the STAR method and identifies several ways in which

Plaintiff's use of the STAR method was appropriate.  Certainly, Plaintiff has created an issue of fact

as to whether she used the STAR method appropriately. At best, this evidence shows the panel

collectively made a poor review of the statement of qualification.  The evidence does not give rise,

however, to an inference of discrimination.  Lancaster's affidavit does not show that three

---

[13]Contrary to Defendant's assertion, Lancaster was identified as an expert witness in
Plaintiff's Rule 26 disclosures.  (Dkt. No. 109 - Ex. B. to Pl. Supp. Br. at 13.)

individuals, two of whom worked outside this Grand Rapids office, either individually or conspiratorially decided to downgrade Plaintiff's statements and upgrade Mason's statements because of race.

Third, Plaintiff argues her superior qualifications, combined with other evidence of discrimination, is sufficient to establish pretext. The problem here is that Plaintiff's other evidence of discrimination is lacking. Cross' history of promoting blacks is irrelevant as Cross played no role in deciding who was interviewed. Plaintiff attempts to revitalize her statistical evidence as evidence of discrimination. Those statistics continue to suffer the same problems already identified. Furthermore, Plaintiff's use of those statistics at the pretext stage risks conflating the first and third stages of the burden shifting scheme.

Plaintiff has created a genuine issue of material fact on the issue of pretext regarding the level 15 position. The reasons proffered by Mason for not selecting Plaintiff are suspect, subject to alternative explanations, and otherwise not objectively verifiable. *See Grano v. Dep't of Dev. of City of Columbus*, 699 F.2d 836, 837 (1983) (holding "subjective evaluation processes intended to recognize merit provide ready mechanisms for discrimination," "the legitimacy of the articulated reason for the employment decision is subject to particularly close scrutiny where the evaluation is subjective and the evaluators themselves are not members of the protected minority," and the "ultimate issue in each case is whether the subjective criteria was used to disguise discriminatory action." (citations omitted)). In her comparative analysis letter of the persons interviewed, Mason admits Plaintiff "had a good interview" and "possess[es] the skills necessary to perform the duties of the [] position." (Def. Ex. N.) However, Plaintiff was not selected because she was "not as qualified as the recommended candidate." (*Id.*)

In Defendant's brief, the reasons proffered for why Plaintiff was not selected by Mason for the EAS level 15 position are limited to the following: (1) Plaintiff refused to work with Lois Dukes, (2) when Plaintiff was asked to perform a new task she would claim she was inexperienced or needed more training, and (3) Plaintiff gave a poor interview. (Def. Br., 18.) Plaintiff has undermined each of the proffered reasons. Plaintiff and Lois Dukes did not get along because, while detailed to the level 17 position, Plaintiff was asked by Cross to investigate allegations of Dukes' incompetence. (Pl. Affidavit ¶ 11-13.) Disciplinary charges were brought against Dukes based on Plaintiff's findings, but the charges were subsequently dismissed by Cross. (*Id.* ¶ 14.) Plaintiff asserts Dukes, rather than Plaintiff, is the person who refused to work cooperatively. (*Id.* ¶¶ 34-35.) Given this circumstance, it is difficult to see how the personality conflict between the two women, which occurred as a result of a task assigned to Plaintiff, would be sufficient to warrant the decision not to promote her. Defendant's second reason is similarly suspect. Plaintiff has offered evidence, in the form of her own affidavit, that Mason assigned to Plaintiff tasks that Mason should have performed. (*Id.* ¶¶ 25, 27.) The reason Plaintiff had difficulty accepting new assignments was because she was handling her workload in the level 15 detail as well as many of the tasks for Mason's level 17 position. (*Id.* ¶ 26.) Plaintiff expressly denies ever asking for additional training. (*Id.* ¶ 29.) Plaintiff asserts, any evidence of uncooperative behavior on her part arose because Mason asked Plaintiff to change desks three times in three weeks, without any justification. (*Id.* ¶ 31.) There is no objective evidence to support Mason's assessment of Plaintiff's interview. Plaintiff denies being flippant in her answers to Mason's questions during the interview. (*Id.* ¶ 36.)

In the reply brief, Defendant completely ignores the explanations of pretext raised in Plaintiff's brief. Instead, Defendant argues only that Plaintiff's reasons are merely her opinion of

her own qualifications and that Plaintiff has failed to offer any evidence that discrimination was the real reason for the decision not to promote Plaintiff.[14]  Defendant is mistaken.  Plaintiff has also alleged that Mason, since she was promoted to the level 17 position, has only assigned black candidates to open details.  (Pl. Affidavit ¶ 24.)

### B.  TITLE VII RETALIATION CLAIM

Federal law prohibits employers from discriminating against employees who "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000-3(a).  In order to establish a *prima facie* case of retaliation under Title VII, a plaintiff must demonstrate (1) she was engaged in an activity protected by Title VII, (2) the defendant knew she was engaged in the protected activity, (3) the defendant took an adverse employment action against her, and (4) the adverse action was causally connected to the protected activity.  *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 588 (6th Cir. 2009); *Arendale*, 519 F.3d at 606; *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987).  When a plaintiff relies on circumstantial evidence to prove her retaliation claim, the burden-shifting process applies.  *Wrenn*, 808 F.2d at 501.

Defendant asserts Plaintiff cannot establish a *prima facie* case because there is no evidence to support the second prong, that Mason knew about Plaintiff's complaint regarding discrimination occurring during the hiring process for the level 17 position.  However, Mason testified that prior to moving to the personnel office, she was working in Defendant's Equal Employment Opportunity office and received a telephone call from Plaintiff asking for forms to file a complaint.  (Admin. Hrg.

---

[14]The portion of Defendant's reply brief addressing the pretext stage of the burden shifting is worded generally and does not specifically address any of Plaintiff's arguments with regard to the level 15 position.  (Def. Reply Br., 9-12.)  In contrast, the reply brief at least mentions the decision of the review committee, which is relevant to the level 17 position.  (*Id.*, 11.)

337-38.) Furthermore, Mason admitted she heard "mumbling" in the office almost "immediately" about Plaintiff's discrimination complaint. (*Id.*, 340.) This evidence is more than sufficient for Plaintiff to establish the second prong of her *prima facie* case. Defendant does not challenge Plaintiff's ability to establish either of the other four prongs of a *prima facie* case for retaliation. Plaintiff has done so.

The parties' arguments for stage two and stage three of the burden shifting scheme for Plaintiff's retaliation claim are identical to the arguments advanced for Plaintiff's discrimination claim for the level 15 position. Defendant offered a nondiscriminatory reason for its decision not to promote Plaintiff. Plaintiff sufficiently undermined that reason to create a genuine issue of material fact that the reason proffered by Defendant is pretext for retaliation.

## C. SECTIONS 1981 AND 1983 CLAIMS and PUNITIVE DAMAGES

Section 717 of the Civil Rights Act of 1964, as amended by section 11 of the Equal Employment Opportunity Act of 1972, provides the exclusive individual remedy for federal employees complaining of employment related race discrimination.[15] *Brown v. Gen. Serv. Admin.*, 425 U.S. 820, 835 (1976). Employees of the United States Postal Service must rely on Title VII for employment related discrimination claims and cannot use section 1981 as a basis for their claims. *Briggs v. Potter*, 463 F.3d 507, 517 (6th Cir. 2006); *Walker v. Henderson*, 4 F.App'x 248, 249 (6th Cir. 2001).

Title VII was amended by the Civil Rights Act of 1991 to allow for punitive damages in Title VII suits. *Robinson v. Runyon*, 149 F.3d 507, 516 (1998). However, the amendment specifically

---

[15]Title VII, which prohibits employment discrimination, was included as part of the Civil Rights Act of 1964, and was extended to cover federal employees in the Equal Employment Opportunity Act of 1972. *Brown*, 425 U.S. 825.

exempts governments, government agencies, and political subdivisions. *Id.* (citing 42 U.S.C. § 1981a(b)(1)). Although the United States Postal Service has commercial like operations, "it functions as part of the federal government." *Id.* Therefore, "the Postal Service is government agency for the purposes of Title VII" and "is exempt from punitive damages." *Id.* at 517.

Defendant argues Plaintiff's § 1981, § 1983, and punitive damage claims must be dismissed. Plaintiff did not respond to these arguments in her brief. At oral argument, Plaintiff acknowledged she did not respond to this portion of Defendant's argument and was no longer pursuing those claims.

## IV. CONCLUSION

Defendant Potter's motion for summary judgment is GRANTED in part and DENIED in part. Defendant Potter's motion regarding Plaintiff's claim for discrimination for the level 17 position is granted. Plaintiff cannot establish that she was similarly situated to Mason, the person who ultimately was awarded the promotion. Even if she could establish a *prima facie* case, Plaintiff has not established that the reason proffered for the decision not to grant Plaintiff an interview was pretext for discrimination. Defendant Potter's motion regarding Plaintiff's claims under § 1981, § 1983, and for punitive damages is also granted.

As to Plaintiff's discrimination and retaliation claims regarding the level 15 position, Defendant Potter's motion is denied. Plaintiff has established a *prima facie* case for her level 15 discrimination and retaliation claims. Plaintiff has also established a genuine issue of material fact whether Defendant's nondiscriminatory reason for its decision not to promote Plaintiff was pretext.

ORDER

For the reasons provided in the accompanying order, Defendant Potter's motion (Dkt. No. 49) is **GRANTED IN PART and DENIED IN PART.** Defendant's motion is granted with regard to Plaintiff's claim for discrimination for the level 17 position, claims under § 1981 and § 1983, and claim for punitive damages. Those claims are **DISMISSED WITH PREJUDICE.** Defendant's motion is denied with regard to Plaintiff's claims for discrimination and retaliation for the level 15 position. **IT IS SO ORDERED.**

Date:   January 22, 2010                  /s/ Paul L. Maloney
                                          Paul L. Maloney
                                          Chief United States District Judge