UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| BARBARA LENSING,            )<br>            Plaintiff,            )<br>                                )  No. 1:03-cv-575<br>-v-                             )<br>                                )  HONORABLE PAUL L. MALONEY<br>JOHN POTTER, POSTMASTER GENERAL,  )<br>UNITED STATES POSTAL SERVICE,  )<br>            Defendant.       )<br>_____) | |

## OPINION AND ORDER MODIFYING AND ADOPTING REPORT AND RECOMMENDATION

This matter comes before the Court on a Report and Recommendation Regarding Plaintiff's Damages (ECF No. 214) issued by the Court appointed Special Master. Plaintiff Barbara Lensing ("Lensing") prevailed at trial on her claim for discrimination. Lensing alleged she was the victim of race discrimination when she was not awarded a level 15 position with the United States Postal Service in 2000. The jury awarded Lensing $300,000 to compensate her for her emotional distress. The jury, however, found against Lensing on her claim for retaliation. Prior to trial, the parties stipulated that the Court would determine damages, if necessary, for back pay and front pay. After trial, the parties submitted separate calculations of damages. (ECF Nos. 196 and 203.) The Court gave the parties notice, under Fed. R. Civ. P. 53, that it intended to appoint a Special Master to resolve the outstanding issues relating to damages. (ECF No. 211.) Neither party filed objections. *See* Fed. R. Civ. P. 53(b)(1). The Court then appointed the Special Master, charging her with resolving "the competing calculations of damages submitted by the parties" and resolving "any outstanding legal and factual issues necessary" to that end.

The Special Master filed her report and recommendation ("R&R") on November 9, 2011. (ECF No. 213.) Lensing filed an objection (ECF No. 215) and a supplemental brief (ECF No. 216).

Defendant Potter ("Defendant") also filed an objection. (ECF No. 216.)

Federal Rule of Civil Procedure 53(f) governs the court's review of the Special Master's Report and Recommendation. The district court reviews de novo all objections to findings of fact made or recommended by the special master, and decides de novo all objections to conclusions of law made or recommended by the special master. Fed. R. Civ. P 53(f)(3) and (4); *see Hockstein v. Microsoft Corp.*, 730 F.Supp.2d 714, 717 (E.D. Mich. 2010), *aff'd* 430 F. App'x 898 (Fed. Cir. 2011).

### PLAINTIFF LENSING'S INITIAL OBJECTIONS (ECF No. 215)

**1. Proper Standard for Determining Damages**

The Special Master awarded Lensing back pay from the date she was denied the promotion to the level 15 position, November 4, 2000, through the last date Lensing reported to work, October 15, 2004. (R&R ¶¶ 8-12.) The Special Master concluded there was insufficient evidence to support a connection between the discrimination that occurred in 2000 and Lensing's disability in 2004. (*Id.* ¶ 24.) The Special Master also concluded that Lensing had not established that she was constructively discharged in 2004. (*Id.*) As a result, the Special Master found Lensing was not entitled to any damages, back pay or front pay, after October 15, 2004.

Lensing argues the Special Master improperly placed the burden on her, rather than Defendant, and also overlooked certain testimony establishing that racial discrimination caused her to suffer depression and attempted suicide. Lensing argues that the law imposes a presumption in favor of relief when discrimination is found, citing *Wooldridge v. Marlene Indus. Corp.*, 875 F.2d 540, 546 (6th Cir. 1989). Lensing contends that the employer, not the employee, bears the burden of establishing that missed work time was due to some reason other than the discriminatory act,

citing *Wooldridge*, 875 F.2d at 547.

On this issue, Lensing's objection is OVERRULED. The Special Master correctly identified the applicable law. In *Equal Employment Opportunity Comm'n v. Monarch Mach. Tool Co.*, 737 F.2d 1444, 1451-53 (6th Cir. 1980), the Sixth Circuit Court of Appeals discussed when a back pay award may be cut off by the trial court. "Precisely when an award of back-pay should end appears to depend upon the circumstances in each case and upon an application of the broad 'make whole' principles enunciated by the Supreme Court in *Albemarle* and by our own circuit in *Head*, *Palmer*, and *Manning v. International Union*, 466 F.2d 812 (6th Cir. 1972)." *Id.* at 1452. Quoting a leading treatise, the court noted "'[i]n a promotion case, the period of liability will end if plaintiff voluntarily quits his employment with the defendant absent a constructive discharge.'"[1] *Id.* at 1453 (citation omitted). Lensing, not Defendant, must establish constructive discharge. (R&R ¶ 20); *see Logan v. Denny's, Inc.*, 259 F.3d 558, 568-69 (6th Cir. 2001).

The holdings in *Wooldridge* do not alter the conclusion that Lensing bears the burden on this issue. *Wooldridge* was a pattern or practice case involving pregnancy discrimination. *Wooldridge*, 875 F.2d at 545. When the trial court makes a general finding of discrimination in a pattern or practice case, the burden is on the employer to prove that a qualified individual who applied for employment was rejected for non-discriminatory reasons. *Id.* at 546 (citing *Monarch Mach. Tools*, 737 F.2d at 1450). The burden placed on the defendant employer in *Wooldridge* was imposed because of the unique situation, a class claim alleging a pattern or practice of discrimination. *Id.* at 546-47 (setting forth the respective duties of each party and standard of proof for the "damages phase of this type case.") Lensing has not alleged she was a member of a class of individuals who

---

[1] Lensing cites *Monarch* for this very proposition of law. (Obj. 3 PgID 3541.)

3

suffered under a pattern or practice of discrimination. The holding in *Wooldridge*, on which Lensing relies, does not apply to this situation.

In addition, the facts support the findings of the Special Master. None of the testimony identified by Lensing in her objection establish that Lensing suffered racial discrimination between 2000 and 2004 causing her to leave work. Generally, Lensing testified that she was very stressed at work, not that she was suffering racial discrimination at work.

**2. Reliance on Facts Not Properly in Evidence**

In paragraph 15(d) of the R&R, the Special Master wrote that the "EAP counseling records closest in time to the 2000 discrimination showed the presence of many life stressors to which [Plaintiff] apparently attributed her need for talk therapy at the time of counseling."

Lensing argues the EAP counseling records were never admitted into evidence at the trial. Lensing further argues that, although she was questioned at trial about various life stressors, her responses discussed only work.

On this issue, Lensing's objection is OVERRULED. Initially, the Special Master did not rely on any evidence not admitted at trial. In paragraph 15(d), the Special Master cites, as supporting evidence, the trial transcript, not the EAP records. The record supports the conclusion that Lensing had many life stressors, including her job. The record does not support the conclusion that only Lensing's job created the stress in her life. The record does not support the conclusion that the job stress was the result of racial discrimination between 2000 and 2004.

**3. Legal Error to Rely on a Lack of Medical Evidence**

In paragraph 15(b) of the R&R, the Special Master noted that "there is no medical evidence in the trial record to support Plaintiff's claim that her disabling mental health conditions were

sufficiently caused by the 2000 discrimination."

Lensing argues the Special Master erred in holding that medical evidence was required to support a claim for damages. Lensing further argues that Defendant bears the burden to show that the work was missed for a reason other than discrimination.

On this issue, Lensing's objection is OVERRULED. The Special Master did not hold that Lensing was required to present medical evidence. The Special Master merely noted that there was a lack of medical evidence to support Lensing's claim. That statement does not exclude the possibility that Lensing's claim could be established by other evidence. As previously discussed, Lensing bears the burden of establishing constructive discharge.

**4. Burden of Proof for the Mitigation of Damages**

In paragraph 15(b), the Special Master stated that Lensing "also offered no mitigation evidence of any attempts to find home employment (although she testified about a desire to pursue that type of work)."

Lensing argues the Special Master "found against" her on the issue of mitigation of damages. Lensing argues Defendant bears the burden on the mitigation of damages.

On this issue, Lensing's objection is OVERRULED. This issue is moot. As the Special Master correctly found that no constructive discharge occurred, whether Lensing attempted to find employment after she left the Postal Service does not affect the damage award for back pay prior to October 2004.

**PLAINTIFF'S SUPPLEMENTAL BRIEF (ECF No. 216)**

**1. Plaintiff Stopped Coming to Work on October 15, 2004**

The Special Master stated that Lensing stopped coming to work on or about October 15,

2004.

Lensing argues that the evidence shows that she could not return to work because of her attempted suicide and her disability. Lensing complains that the Special Master cited a document not entered into evidence at trial.

On this issue, Lensing's objection is OVERRULED. The Special Master cited the document to which Lensing objects to show that Lensing was no longer being paid by the Postal Service after October 15, 2004. The document was filed by Defendant as part of its calculation of damages. It was entirely appropriate for the Special Master to refer to the document, as the Special Master was charged with resolving the calculation of damages. The Special Master did not refer to the document for any reason other than to identify the date on which Lensing was no longer being paid by the Postal Service. Whether Lensing left her position voluntarily, because of disability, because of discrimination, or for some combination of those reasons, or any others, is not a factual finding in paragraph 12 of the R&R.

### 2. Remaining Objections

Having reviewed Lensing's remaining objections to the R&R, and having reviewed the relevant portions of the R&R and the record, Lensing's remaining objections are OVERRULED. The Court finds the Special Master's findings of fact accurate and supported by the record. To the extent that Lensing argues that the Special Master made erroneous conclusions of law, the Court finds that the Special Master correctly outlined the relevant legal principles and properly applied the facts to the law.

## DEFENDANT'S OBJECTION

Defendant objects only to the Special Master's conclusion that Lensing should be awarded

prejudgment interest. Defendant raises several objections on this issue.

### 1. Plaintiff Waived Prejudgment Interest

The award recommended by the Special Master includes prejudgment interest.

Defendant argues, because Lensing did not include prejudgment interest in her brief calculating damages, she has waived any claim to prejudgment interest. Lensing responds by pointing out that prejudgment interest was requested in the prayer for relief in her amended complaint.

On this issue, Defendant's objection is OVERRULED. The district court's decision to award prejudgment interest falls within its broad discretion. *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1170 (6th Cir. 1996); *Equal Employment Opportunity Comm'n v. Wilson Metal Casket Co.*, 24 F.3d 836, 841 (6th Cir. 1994). "An award of 'prejudgment interest . . . is an element of complete compensation' in a Title VII back pay award." *Wilson Metal Casket*, 24 F.3d at 841-42 (quoting *Loeffler v. Frank*, 486 U.S. 549, 558 (1988) (internal ellipses in *Wilson*)). The Sixth Circuit has held that, ordinarily a district court abuses its discretion "*not* to include prejudgment interest in a back-pay award." *Equal Employment Opportunity Comm'n v. Kentucky State Police Dep't*, 80 F.3d 1086, 1098 (6th Cir. 1996) (involving a back-pay award under the ADEA and quoting *Clark v. Frank*, 960 F.2d 1146, 1154 (2d Cir. 1992) (emphasis added in *Clark*)). Although Lensing may have neglected to include a calculation of prejudgment interest in her damage calculations, that omission is not fatal. Lensing could have moved for a prejudgment interest award after judgment was entered. *See Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989) ("Under these precedents, the Court of Appeals was correct to conclude that a postjudgment motion for discretionary prejudgment interest constitutes a motion to alter or amend the judgment under Rule 59(e).").

**2. Delay Was Fairly Attributable to Plaintiff and**

**3. Delay Cannot Be Fairly Attributable to Defendant**

The Special Master concluded that any delay in the action could not fairly be attributed to Lensing. (R&R ¶ 32.)

Defendant argues that certain delays were attributable to Lensing. Defendant discusses the Settlement Agreement between the two parties in 2005. Defendant directs the Court's attention to certain documents where extensions of time were sought, among other things.

On this issue, Defendant's objection is OVERRULED. Both parties sought various extensions throughout this litigation. The parties also filed several joint stipulations to extend deadlines, including joint motions to extend the time to submit settlement papers because Lensing was applying for disability retirement pursuant to the Settlement Agreement (ECF Nos. 76, 79, 81, 83; *see also* ECF No. 86). The fact that it took Lensing several years for her application to work its way through the bureaucracy before ultimately being denied those benefits does not persuade this Court that prejudgment interest should not be awarded. When the parties entered the Settlement Agreement, Defendant was well aware, or at least should have been aware, that Lensing's pursuit of those benefits could take a long time, and, as was the case, might not be successful.

**4. Prejudgment Interest Should Not Be Awarded on Compensatory Damages**

The Special Master recommends awarding prejudgment interest on Lensing's back pay, lost retirement contributions, and on the damages awarded by the jury. (R&R ¶¶ 29 and 33.)

Defendant argues prejudgment interest should not be added to the jury's compensatory damage award. Defendant refers to *Hudson v. Chertoff*, 484 F.Supp.2d 1275, 1276 (S.D. Fla. 2007) (O'Sullivan, M.J.) (citing and quoting *Rau v. Apple-Rio Mgt. Co, Inc.*, 85 F.Supp.2d 1344, 1349

(N.D. Ga. 1999) (Brill, M.J.)) and *Equal Employment Opportunity Comm'n v. Everdry Mktg. and Mgt., Inc.*, 556 F.Supp.2d 213, 223-24 (W.D.N.Y. 2008) (Payson, M.J.), where prejudgment interest on emotional damages was denied.  These cases, *Hudson, Rau,* and *Everdry*, generally stand for the proposition that, under common law, prejudgment interest is not awarded for unliquidated damages, like pain and suffering.  Defendant also argues that prejudgment interest cannot be awarded on the damages awarded by the jury because the amount would exceed the $300,000 cap on compensatory damages found in 42 U.S.C. § 1981a(b)(2).

The purpose of awarding prejudgment interest in Title VII cases is to compensate the victims of illegal acts for "both the time value of lost money as well as for the effects of inflation."  *United States v. City of Warren, Michigan*, 138 F.3d 1083, 1096 (6th Cir. 1998) (citing *Equal Employment Opportunity Comm'n v. Grady*, 857 F.2d 383, 392 (6th Cir. 1988)); *see Wilson Metal Casket*, 24 F.3d at 842 ("Prejudgment interest helps to make victims of discrimination whole and compensate them for the true cost of money damages they incurred.").  Although the Sixth Circuit has affirmed awards where prejudgment interest was added to damages for emotional distress, the propriety of the interest award was not raised as an issue on appeal.  *See, e.g., Moorer v. Baptist Mem'l Health Care Sys.*, 398 F.3d 469, 478, 485-86 (6th Cir. 2005); *Hamlin v. Charter Twp. of Flint*, 165 F.3d 426, 436 (6th Cir. 1999).

The Court finds the reasoning in *Hudson, Rau,* and *Everdry* persuasive.  In cases in federal court on federal question jurisdiction, prejudgment interest awards are governed by common law principles.  *See City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 194 (1995) ("Although Congress has enacted a statute governing the award of postjudgment interest in federal court litigation, *see* 28 U.S.C. § 1961, there is no comparable legislation regarding prejudgment

interest. Far from indicating a legislative determination that prejudgment interest should not be awarded, however, the absence of a statute merely indicates that the question is governed by traditional judge-made principles."); *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 437 (7th Cir. 1989) (holding "prejudgment interest is governed by federal common law."). Unlike lost wages, damages from emotional distress are not easily monetized. There are no established market values for pain and suffering. *Cf., Weaver v. Caldwell Tanks, Inc.*, 190 F. App'x 404, 414 (6th Cir. 2006) ("Unliquidated damages are damages which cannot be determined by a fixed formula and must be established by a judge or jury."). Here, the jury was asked "What amount of money will reasonably compensate the plaintiff for the emotional distress that was caused by the adverse employment action?" (ECF No. 186 Verdict PgID 1844.) In the blank provided, the jury wrote "$300,000 for pain & suffering + economic damages." (*Id.*) The emotional injuries suffered by Lensing were given a monetary value by the jury at the close of the trial. Lensing, however, did not lose the time value of that money. Therefore, there is no basis for awarding prejudgment interest on that award.

Even if the Court were to find that prejudgment interest on the emotional distress damages was appropriate, 42 U.S.C. § 1981a(b)(2) places a statutory cap on the award at $300,000. Section 1981a applies to discrimination actions brought by employees of the Postal Service, *see* 42 U.S.C. § 1981a(a)(1) and 42 U.S.C. § 2000e-16(a), and authorizes damages under subsection (b) of that section, 42 U.S.C. § 1981a(b)(1). Subsection (b)(2) of § 1981a excludes from compensatory damages backpay and interest on backpay. 42 U.S.C. § 1981a(b)(2). Subsection (b)(3) limits the amount of compensatory damages an individual may be awarded for, among other things, emotional pain and suffering.

> The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party - -
>
> (D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000.

Because the jury awarded Lensing the maximum amount she could receive under the statute, no additional amount, such as prejudgment interest, can be added to the award. *See Hudson*, 484 F.Supp.2d at 1278-79.

On this issue, Defendant's objection is AFFIRMED. The Special Master's report and recommendation is MODIFIED such that Lensing is not entitled to prejudgment interest on the $300,000 in damages awarded by the jury. Lensing is entitled to prejudgment interest on her lost backpay and retirement contributions, which total $21,305. (R&R ¶¶ 26 and 27.)

**5. Interest Calculations**

The Special Master concluded that, under court's discretion, prejudgment interest should be calculated using 28 U.S.C. § 1961. (R&R ¶ 31 .)

Defendant objects, arguing that the Special Master's calculations appear to follow Michigan's money judgment interest rate, Mich. Comp. Laws § 600.6013(8). Lensing urges the Court to use the Michigan money judgment interest rate.

The Sixth Circuit has held that "the matter of prejudgment interest remains essentially one for the discretion of the trial judge." *Equal Employment Opportunity Comm'n v. Wooster Brush Co. Emps. Relief Assoc.*, 727 F.2d 566, 579 (6th Cir. 1984); *see Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 619 (6th Cir. 1998). The Sixth Circuit has indicated that "district courts may be influenced by the congressional wisdom expressed in the amendment of 28 U.S.C. § 1961(a), but we do not think

11

that they are invariably compelled to adopt the statutory postjudgment rate in determining prejudgment interest." *Wooster Brush Co.*, 727 F.2d at 579; *see Ford*, 154 F.3d at 619 ("[W]e have held previously that the statutory postjudgments framework set forth in 28 U.S.C. § 1961 is a reasonable method for calculating prejudgment interest awards."). *But see Gorenstein*, 874 F.2d at 437 (criticizing the rate identified in § 1961, which relies on weekly auctions of Treasury bills, as being too low because there is no default risk with Treasury bills).

On this issue, Defendant's objections are OVERRULED. The Court agrees with Defendant that the Special Master relied on the Michigan money judgment interest rate, rather than the interest rate identified in § 1961(a).[2] However, the Court, it its discretion, concludes that using the Michigan money judgment interest rate is appropriate. The Michigan money judgment interest rate is fair, even though the Michigan rate is typically higher than the rate identified in § 1961(a). *Compare* R&R Exhibit 1 PgID 3538 *with* Defendant's Objections Exhibit 1 PgID 3584. Using the higher rate of interest fairly offsets the need to calculate prejudgment interest on Lensing's lost backpay on a paycheck-by-paycheck basis. The Special Master properly compounded prejudgment interest on an annual basis.

---

[2]The interest rates listed in the R&R Exhibit 1 (ECF No. 214-1 PgID 3538) are identical to the Michigan prejudgment interest rates recorded in the Michigan Lawyers Weekly website, http://milawyersweekly.com/money-judgment-interest-rates/ (accessed on January 15, 2013).

By substituting $21,305 for the $321,305 amount in the Special Master's calculations, Lensing is entitled to $7,739.81 in prejudgment interest. Adding the lost wages and benefits ($21,305), prejudgment interest ($7,739.81) and the jury award ($300,000), Lensing is entitled to a judgment of $329,044.81.

## CONCLUSION

The Special Master's Report and Recommendations accurately recites the facts of the case and generally identifies the proper conclusions of law. Defendant correctly objects to the award of prejudgment interest on the emotional distress damages awarded by the jury. With that single modification, the Report and Recommendation is ADOPTED as the opinion of this Court.

## ORDER

Consistent with the accompanying opinion, the Report and Recommendation (ECF No. 214) is **MODIFIED and ADOPTED** as the opinion of this Court. Plaintiff Lensing is entitled to a judgment of $329,044.81, which includes back pay, lost retirement benefits, prejudgment interest and the damages awarded by the jury. **IT IS SO ORDERED.**


Date:  January 17, 2013              /s/ Paul L. Maloney
                                     Paul L. Maloney
                                     Chief United States District Judge